GLETTLER, by guardian *ad litem,* Respondent, vs. SHEBOYGAN LIGHT, POWER & RAILWAY COMPANY, Appellant.

*November 9—December 4, 1906.*

*Street railways: Motormen: Duties: Negligence: Street crossings: Infant travelers: Personal injuries: Evidence: Motorman performing duties of conductor: Concurrence of two negligent acts: Instructions to jury: Experts: Qualification: Argument of counsel.*

1. A motorman in charge of an electric car is required, in the exercise of ordinary care, to keep a proper lookout as to the tracks and streets upon which the car is operated to avoid collision with persons and vehicles on the street.

Glettler v. Sheboygan Light, Power & R. Co. 130 Wis. 137.

2. In addition to the duty of a motorman in operating and managing the car and keeping a proper lookout along the track, he must observe the streets adjacent to the track sufficiently to enable him to ascertain whether persons are approaching or are about to approach the track, and, if such persons are in danger of being struck by the car, he must do all that an ordinarily careful and prudent motorman would do to avoid doing injury to such persons.

3. The foregoing principles require a motorman, at a street crossing, to exercise greater care than between crossings, and much more care in case of very young children approaching the track unconscious of an approaching car, or being so circumstanced as to suggest a probability of such unconscious approach, than in case of adults.

4. In an action for personal injuries received by a child four and one-half years old from being run over by an electric car, the evidence, stated in the opinion, is *held* to present a situation such that the motorman could have seen the plaintiff approaching the car at a distance sufficient to have enabled him, by the exercise of ordinary care, to have stopped the car before the collision.

5. Such failure to observe plaintiff is *held* to sustain a finding that the motorman was negligent in not keeping a proper lookout for the child, from which flowed liability for the damage proximately resulting therefrom.

6. If in the management of an electric car the motorman is required to perform the duties of conductor in addition to those of motorman, and an injury results which would not have occurred but for the performance of such additional duties, such management constitutes negligence.

7. In an action for personal injuries received by a child four and one-half years old from being run over by an electric car, it appeared, among other things, that the motorman was performing the additional duties of conductor, and was engaged in looking after the payment of fares when, but for the performance of such additional duties, he could have observed the plaintiff attempting to cross the street. *Held*, that it was proper to submit to the jury the question of defendant's negligence in this respect.

8. Where a defendant is charged with the consequence of two negligent acts, and the result is the natural and probable consequence of their concurrence, it is of no moment which of the two negligent acts was first and which was last in point of time. Under such circumstances the injury inflicted may be said to be the result of the concurrence of the two negligent acts, and to be proximately caused by them.

9. Where the instructions given to the jury on a branch of the case were sufficient and properly covered the case as presented by the evidence, it is not error to fail to instruct the jury on a matter concerning which no special instruction was requested.

10. Instructions to the jury, mentioned in the opinion, are *held* to have clearly informed them of the meaning of proximate cause, and not to have invaded the province of the jury.

11. From the evidence of expert witnesses, stated in the opinion, it is *held* that they were qualified, and that their opinion evidence was competent and proper.

12. Remarks of counsel in argument as to the probable force of the evidentiary facts and the claim predicated thereon by opposite counsel, if prejudicial, were *held* cured by an admonition of the court that it was the province of the jury to determine the weight of the evidence.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

Action for personal injuries received by plaintiff when about four and one-half years of age from being run over by an electric street car of the defendant. A very few minutes before he was injured the plaintiff had been playing with an older boy on New York avenue in Sheboygan, at a point about 150 feet west of Eighth street. Eighth street, running north and south, was traversed by a double track of the defendant company. Plaintiff was first seen by any witness as he was running north by east as rapidly as he could, about ten feet north of the south foot-crossing of New York avenue across Eighth street, and about five feet west of the west track. At a point approximately fifteen or twenty feet north of where he was first seen, and perhaps fifteen feet further east, he was struck by the car going north on the east track. The car of the defendant had no conductor, the motorman being charged with the duty of seeing to the deposit of fares, making change, observing the entry and exit of passengers on the rear platform, and the interior condition of the car, and also of watching for persons desiring to take the car. Although the street was wholly unobstructed in front of him, according to the motorman's testimony, he did not see the

boy until the car had in part passed over the south crossing
of New York avenue, at which time the boy was running
across the tracks at a point about twenty feet north of him
and a little west of the west rail of the east track. The motor-
man testified that he threw off the power and set his brake,
but did not apply the reverse, and that the car ran fifty-five
or sixty feet, overtaking and striking the boy. There was
evidence that, some passengers having entered at or north of
the last street crossing, the motorman, just before reaching
New York avenue, turned around and inspected the box in
which fares are deposited. The speed of the car, according
to different witnesses, was from five to seven or eight miles
an hour. The possibility of stopping such a car with the
brakes alone at such a rate of speed was given by various wit-
nesses at from fifteen to sixty feet, and at from four to twenty
feet by the use of the reverse, provided the reverse was prop-
erly applied so as not to blow out the safety fuse. Motions
for nonsuit and for direction of a verdict in favor of the de-
fendant were overruled.

By special verdict the jury found (1) that the defendant,
by requiring the motorman to perform the duties of motor-
man and conductor, failed to exercise ordinary care to avoid
injuring persons traveling across Eighth street; (2) that the
motorman failed to use ordinary care to discover plaintiff
while he was in the act of crossing Eighth street ahead of the
car; (3) if he had used such ordinary care he would have
seen him in time to have stopped the car and to have pre-
vented the injury; (4) that the negligence specified in the
first and second questions was the proximate cause of plaint-
iff's injury; (6) and that those having charge of the plaint-
iff were not guilty of contributory negligence. Defendant
moved for judgment notwithstanding the verdict, for the re-
versal of the answers to the first, second, third, fourth, and
sixth questions, and for judgment upon the verdict so modi-
fied; and, in the event of denial of such motions, that the ver-

dict be set aside, and that a new trial be granted—all of which motions were overruled. Upon plaintiff's motion judgment was entered for the amount of the verdict, $8,000, and costs. From this judgment defendant appeals.

For the appellant there was a brief by *Bowler & Bowler* and *Francis Williams,* attorneys, and *William Osgood Morgan,* of counsel, and oral argument by *Mr. E. R. Bowler* and *Mr. Williams.*

For the respondent there was a brief by *Voigt & Voigt,* and oral argument by *Edward Voigt.*

SIEBECKER, J. Motormen in charge of electric cars are required, in the exercise of ordinary care, to keep a proper lookout as to the tracks and the streets upon which the cars are operated to avoid collision with persons and vehicles on the street. In addition to his duty of operating and managing the car and keeping a proper lookout along the track, he must observe the streets adjacent to the track sufficiently to enable him to ascertain whether persons are approaching or are about to approach the track, and, if such persons are in danger of being struck by the car, he must do all that an ordinarily careful and prudent motorman would do to avoid doing injury to any such person.

"Obviously, those principles require a motorman at a street crossing to exercise greater care than between crossings, and much more care in case of very young children approaching the track unconscious of an approaching car, or being so circumstanced as to suggest a probability of such approach, than in case of adults." *Forrestal v. Milwaukee E. R. & L. Co.,* 119 Wis. 495, 97 N. W. 182; *Anderson v. Minneapolis St. R. Co.* 42 Minn. 490, 44 N. W. 518.

If the situation here presented is such that the motorman could have seen the plaintiff approaching the car at a distance sufficient to have enabled him, by the exercise of ordinary care, to have stopped the car before the collision, then his failure to observe plaintiff cannot relieve the company

from liability for the damage proximately resulting there-from. Appellant strenuously urges that the evidence fails to present a situation from which the jury could infer that the motorman omitted to exercise the care required of him at the time of the accident to avoid running against the plaintiff. In this contention it is claimed that the evidence permits only of the inference that, from the time the plaintiff could have been seen approaching the tracks within the field of observa-tion of the motorman, the car could not have been stopped be-fore the accident. An attentive reading of the case does not sustain this view. It appears that the street was wholly un-obstructed at the crossing and in the vicinity of the accident. That the motorman had a view of all the street crossing with-in the limits of the boundaries of Eighth street as he ap-proached New York avenue cannot be questioned. There is testimony tending to show that as the car approached or was near the south foot-crossing of the avenue the plaintiff was within the limits of Eighth street and was running rapidly north by east toward the place where the accident occurred, somewhere from fifty to sixty feet from the car. We find no support for the claim that it is shown that the child's pres-ence within the course it followed was not necessarily within the field of the motorman's view as he approached and pro-ceeded onto New York avenue and thence north toward the place where he struck the plaintiff. It also appears that plaintiff must have been from fifty to sixty feet distant when he could first have been observed by the motorman. The in-quiry, therefore, is whether the motorman could have stopped the car by applying the brake in the usual manner within this distance. The speed of the car, according to the evidence, did not exceed seven to eight miles an hour, and it is said to be possible to stop a car running at this speed in from fifteen to sixty feet. This furnishes the field within which it was for the jury to find the ultimate fact as to this issue. They have answered the inquiry in response to a special question

under the instruction of the court. Their finding cannot be disturbed for want of evidence to support their conclusion, and the finding that the motorman was negligent in not keeping a proper lookout for the child is fully sustained.

Error is assigned upon the verdict finding that defendant was negligent in requiring the motorman on this car to perform the duties of conductor in addition to those of motorman. In the case of *Dahl v. Milwaukee City R. Co.* 65 Wis. 371, 27 N. W. 185, it was held that if street-car drivers were required to perform duties in addition to those required of them as drivers which materially interfered with their duty to prevent accidents by keeping a proper lookout for people approaching the track, and if it appeared that an injury resulted which would not have occurred but for the performance of such additional duties, then such management of the business constituted negligence. There is no dispute but that the motorman of this car performed the additional duties of conductor. There is some evidence tending to show directly that the motorman was engaged in looking after the payment of fares when he should have observed the plaintiff attempting to cross the street. Other facts and circumstances regarding the conduct of the business are corroborative of the fact that imposing the conductor's duties upon the motorman interfered with his performance of his duties as motorman. This evidence made the question of defendant's negligence in this respect a proper inquiry for submission to the jury. It was further found that the negligence of the defendant in not keeping a proper lookout, and the negligence of imposing conductor's duties on the motorman, were the proximate causes of plaintiff's injury. This is claimed to be error, because it was not ascertained to which of the two grounds of negligence found the accident was attributable. It seems apparent that the jury found that both acts of negligence shared in producing the result. Since defendant is charged with the consequence of both negligent acts and the result is the nat-

ural and probable result of their concurrence, it is of no moment which of the two negligent acts was first and which was last in point of time. The finding in effect is that the injury would not have resulted but for defendant's negligence, and that both negligent acts shared in producing the result. *Kraut v. F. & S. P. C. P. R. Co.* 160 Pa. St. 327, 28 Atl. 783; *McCoy v. Milwaukee St. R. Co.* 88 Wis. 56, 59 N. W. 453; *Grant v. Keystone L. Co.* 119 Wis. 229, 96 N. W. 535. Under such circumstances the injury inflicted may be said to be the result of the concurrence of the two negligent acts, and to be proximately caused by them.

Appellant's contention that the court erred in not instructing the jury specially that, if the plaintiff suddenly and unexpectedly attempted to cross the track, then such conduct would be the proximate cause, is answered by the finding of fact in the special verdict, and the evidence supporting it, that the motorman could have seen him approaching. It appears that plaintiff pursued a continuous course from the time he was seen on the street, that he approached from the southwest corner of Eighth street and the avenue, and thence proceeded northeast to where he was struck by the car. This shows that the motorman would obviously have been apprised of his approach to the track had he exercised due care in observing this part of the street. Appellant did not specially request such instruction. If it deemed it necessary and proper such request should have been made in writing. The instructions given upon this branch of the case were sufficient, and properly covered the case as presented by the evidence. Further criticism is made of that part of the court's charge to the jury stating that if the jury found the defendant guilty of negligence in the conduct of the business, in requiring the motorman to perform the duties of conductor, then it remained to be determined whether it was "a proximate or the proximate cause" of the injury to plaintiff. In connection with this instruction the court correctly defined to the jury

what constitutes proximate cause in the law of negligence, which clearly informed them of the meaning of the language excepted to. Nor do we find any ground for the objection that the court improperly invaded the province of the jury and informed them what the evidence established as the proximate cause of the accident. The instructions were free from any suggestion of what facts the evidence established as regards the issues submitted to the jury. Exceptions are argued as to the qualification of a witness testifying to the speed of the car, and as to the competency of the evidence of a witness testifying to the distance within which a car could be stopped. From an examination of these exceptions we are convinced that the witnesses who testified to the speed of the car were qualified, and that the opinion evidence giving the distance within which the car could be stopped was competent and proper. The contention that appellant was prejudicially affected by improper remarks of respondent's counsel in his comments on the case before the jury is not borne out by the record. The remarks excepted to were made in argument as to the probable force of evidentiary facts and the claim predicated thereon by appellant's counsel. The court admonished the jury, in response to the objection, that it was their province to determine the weight of such evidence, and this excluded the inference that counsel's characterization of the evidence was given controlling weight by them. We deem that this was sufficient to remove any probability that the jury had been prejudiced by such remarks.

These considerations cover all the material questions presented by the record and call for affirmance of the judgment.

*By the Court.*—Judgment affirmed.